Caeuthees, Jl,
delivered the opinion of the court.
Thomas Layne files this bill us executor of Kobert Layne, to get possession of certain negro slaves now in the possession of defendants, which he alleges belong to the estate of his testator, who bequeathed them to defendant, America, his widow, during her life or widowhood, and after that, to be equally divided between her and his five children. A decree had been made to sell them for division, after the marriage of the widow to defendant, *233 Müos. But, before the sale, they were attached by the bill of said America, under a claim of separate title, and were hired out by complainant under an order of court, but have been recently talcen secretly and unlawfully from the hirers, and are now in the possession of defendant, America. This bill is filed to secure the slaves, and settle the rights of the parties and said complainant in the execution of his trust as executor.
The defendant, America, claims the said slaves under the laws of Texas, where she was married to testator. She says she married the testator in 1837, when she was a minor, and as one of the distributees of her father, then deceased, she was entitled to these slaves; that the children had all agreed that her mother should ■ keep the slaves until she died, which occurred perhaps in 1841. Soon after that event, her brother sent these slaves to her and her husband in Bedford county, with some kind of paper title made by him to her said husband. This she insists communicated no title, as her said brother had none-, same being vested in her. The negroes remained, however, in the possession of said Eobert Layne, until his death; and after that, passed to Ms executor, and was controlled by him as such. But she places her claim upon the ground that “ by the. laws of Texas, at the time of her marriage, the property, both real and personal, belonging to the wife at the marriage, does not go to the husband, but belongs to the wife as though she were a feme sole.” That Texas was her domicil, and that it was, by agreement between them, to be the future home of both, and that Layne, at the time of the marriage, had no permanent domicil. They came to Tennessee, she says, to visit his relations, intending to return, but remained here on his farm until Ms death in the month of April, *234 1849. The proof shows that the slaves were moveable, or personal property, by the laws of Texas, but that the marital right did not attach to them in favor of the husband, but they continued after marriage the separate property of the wife as before. So the- only question here is, whether the laws of Tennessee or Texas fix and control the rights of the parties to the property.
It is every where settled as a principle of international law, that where the parties have different domicils, the law of the husband’s regulates the marital rights as to moveable property, but not as to real; that is governed by the law of the place where it is situated; Story on Con. of Law, § 198; Kneeland vs. Ensley, Meigs 628. But what is real and what personal property, must depend upon the law of the place; and it is clear that every State or country may impress upon all property within its limits, any character it pleases, and no other State can vary or disregard it; McCollum vs. Smith, Meigs 342. In Louisiana, for instance, they have added slaves, mules, horses, &c., intended for implements of husbandry, &c., to the list of immoveables. This character is impressed upon slaves in Arkansas and several other States. These all in their nature moveables, but the law may change it. But in both Texas and Tennessee they are moveable or personal property, and must fall under the rule laid down above, as to the predominance given to the husband’s domicil in controlling the rights of the parties. So, if the fact be that Robert Layne was a citizen of Tennessee in 1837, when this marriage took place, all the personal property then vested in his wife, became his, upon reduction to possession, if there is nothing more in the case. But it is insisted that at the time of his marriage he had no domicil, and promised to settle *235 in Texas. This would materially change the case if it is sustained by the proof; but we think the proof very clearly shows that Robert Layne never did relinquish or lose his domicil of birth and of death in Bedford county, Tennessee. It is true that he went to Texas in 1831, to look at the country, and no doubt then as well as after his marriage, and perhaps at times down to his death, had it in contemplation, or rather under consideration, to remove to that State. But there is no sufficient proof in this ease to show that he ever did change his home, or obligate himself to do so. His declaration that he intended to emigrate to that county, and that he would go to the negroes of his wife, instead of incurring the expense of bringing them to him in this State, all fall far short of proving that he had bound himself to his wife or any one else, to remove there, or that his purpose even was ever fixed and settled on that subject. But it is enough for this case to see that he was not without a domicil when the marriage occurred, but still retained his domicil of origin. A man is presumed to hold his domicil of nativity until another is obtained; and to constitute this change, the fact and intention must concur. If the parties agree before, or at the time of the contract of marriage, that they would live in a different State than that of the contract, or have reference to a different place of residence, and actually settled there, then the law of that State will govern the rights of the parties; Meigs 628. Here there was no such after settlement; the husband never did change his domicil, but changed his wife’s to his. But it is insisted that he agreed to do so, and by that shall be so far bound as to exclude him from any right to her property under the laws of Tennessee, but to have the effect to preserve the *236 right in her under the Texas laws. True the parties might by special contract before marriage, control all these rules, and regulate their rights as they might stipulate. And it may be, that if Robert Layne had bound himself as a condition or element in the marriage contract, that their matrimonial residence should be Texas, that her title would have been secured from his marital right under the law of his domicil. But this consequence might still be doubtful, unless the change was afterwards in fact made; yet, in this case, we do not think that state of facts exists, and consequently that question does not arise. Ilero there is no sufficient proof that he ever so agreed or bound himself. The full extent of the proof is, that he entertained a floating idea of doing so at some time or other. lie was a man of good estate, both real and j>ersonal, in Tennessee, brought his wife to it, as soon as he married her, and continued on his estate for twelve years, and until his death. His relations were all here; he brought the slaves of Ms wife here as soon as it was proper for him to do so, in view of an understanding wMch he would not violate, that her mother should retain the property during her life. It also appears, that after the death of her husband, the defendant in some proceeding in court, upon her oath, admitted the right of her husband to these slaves. This shews at least, that her change of mind on the subject of her rights, is one of the consequences of her second union, and that this new alliance has in some degree changed the current of her feelings as to the direction of this property. We cannot, however, see any principle on which we can sustain her claim, and do therefore affirm the decree of the chancellor in all things.
The cause will be remanded for further proceedings *237 in tbe court below, in tbe matter of account ordered by tbe chancellor.